KLAUDER v. GABRIELS et al.   (No. 100 [27].)

(Supreme Court, Appellate Division, Third Department.   May 21, 1914.)

1. FALSE IMPRISONMENT (§ 26*)—FRAUDULENT REPRESENTATIONS—EVIDENCE.
   Defendants being sought to be held for false imprisonment on the ground of fraudulent representations, it was error not to allow them to testify to what representations they made and to explain them.
   [Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. §§ 103, 104; Dec. Dig. § 26.*]

2. APPEAL AND ERROR (§ 215*)—LAW OF THE CASE.
   The law as charged by the trial court and acquiesced in by both counsels is the law of the case on appeal.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1309–1314; Dec. Dig. § 215.*]

3. FALSE IMPRISONMENT (§ 31*)—FRAUDULENT REPRESENTATIONS—EVIDENCE.
   Evidence, in an action for false imprisonment, held insufficient to show fraudulent representations by defendants in instigating proceedings for plaintiff's commitment as an insane person.
   [Ed. Note.—For other cases, see False Imprisonment, Cent. Dig. § 108; Dec. Dig. § 31.*]

   Woodward, J., dissenting.

Appeal from Trial Term, St. Lawrence County.

Action by Alexander L. A. Klauder against Henry Gabriels and others. From a judgment on a verdict for plaintiff for $15,000, and from an order denying a motion for new trial, defendants Gabriels and Joseph H. Conroy appeal. Reversed, and new trial ordered.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Thomas Spratt and D. B. Lucey, both of Ogdensburg, and Edgar T. Brackett, of Saratoga Springs, for appellants.

Robert M. Moore, of New York City, for respondent.

SMITH, P. J.   [1-3]   The complaint alleges in substance that the defendants appellants and two others conspired to injure the plaintiff and his good name, fame, and reputation by knowingly, falsely, and willfully charging the plaintiff with being insane and a person dangerous to be at large, and by causing charges to be preferred against him before the surrogate of St. Lawrence county, and by reason of such acts causing said surrogate to commit him to the St. Lawrence Hospital for the Insane, where he was confined for about six weeks. The plaintiff was a priest in the Catholic Church. The defendant Gabriels was bishop of the diocese of Northern New York, and the defendant Conroy was the vicar general of the diocese. The other defendants were Drs. Hanbridge and Cooper, who examined the plaintiff and certified to his insanity, and upon whose certificate the commitment was afterwards made. The case was submitted to the jury as against all of the defendants. The jury found a verdict in favor of the defendants Hanbridge and Cooper and in favor of the plaintiff as against the defendants Gabriels and Conroy for the sum of $15,000. From

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the judgment entered upon this verdict, and from an order ·denying the defendants' motion for a new trial, this appeal is taken.

This case was tried in the court below by acquiescence of both plaintiff's and defendants' counsel as an action for false imprisonment. The question of probable cause was not submitted to the jury and was not asked to be submitted by counsel for the defendants. Upon the appellants' liability, two questions were submitted to the jury: First, whether the plaintiff was insane at the time of his commitment. Secondly, whether the defendants were guilty of fraud in procuring the commitment; the court charging that even though sane, unless the defendants were guilty of fraud in procuring the commitment, the defendants were not liable. The question of the fraud of the defendants was further narrowed by the charge of the court:

"If there was no fraud, if there was no fraudulent representation on the part of any one, then your verdict will be no cause of action."

The jury must have found, then, in order to find a verdict against these defendants, that there was fraudulent representation upon their part in causing this commitment.

It must be borne in mind that any claimed injustice upon the part of these defendants toward plaintiff in the exercise of their authority over him in the church cannot be made a ground for sustaining this judgment. Attention is called to this because the burden of respondent's argument to sustain the judgment is based upon such claim rather than upon such facts as may constitute a legal cause of action. The complaint is of unlawful imprisonment, and the only fraud which could make defendants liable for such imprisonment must be found in false representations made either to the judge who granted the order or to the physicians upon whose certificate the commitment was made.

The commitment was made by the surrogate of St. Lawrence county upon the certification of the two doctors, Hanbridge and Cooper. There was no communication whatever between the surrogate and these defendants, so that no fraudulent representations were made to him. The fraudulent representations for which the defendants have been charged must be found in the representations by the vicar general Conroy to the doctors, Hanbridge and Cooper, upon whose certificate plaintiff was committed. While such representations are made the basis for the recovery in this action, the court excluded the testimony of the defendant Conroy as to what statements were made by him to these physicians. This was clearly erroneous. Not only has the defendant Conroy been held, but the defendant Gabriels also has been held, for fraudulent statements made by defendant Conroy, which he was not allowed to contradict or explain, and this error alone requires the reversal of this judgment. But the plaintiff's difficulty lies deeper than this. These doctors had no conversation with defendant Gabriels. They swore to the conversations with Conroy and statements made by him upon which in part they based their certificate of the plaintiff's insanity. Respondent's counsel in his brief does not point out a single statement made by defendant Conroy to the doctors as false. The defendants have thus been charged by this verdict, on account of false representations made by the defendants, without one

word of proof of any such false representations. A careful analysis of the evidence of defendants Hanbridge and Cooper as to the representations made to them by defendant Conroy shows every statement to be borne out by the evidence, at least to be borne out by representations made to the defendant Conroy, upon which he had the absolute right to rely and which he apparently believed. The certification of the plaintiff's insanity was made upon examination of the writings of the plaintiff himself and upon the personal examination of the plaintiff by these doctors, as well as upon the statements made to them by defendant Conroy. The finding that the doctors' certificate was caused by any misrepresentations on the part of the defendant Conroy, acting for himself and perhaps for defendant Gabriels, is clearly against the weight of evidence. It is the law of this case upon this appeal, as charged by the trial court and acquiesced in by both counsel, that, unless the plaintiff's commitment was caused by fraudulent representations made or instigated by the defendants, the defendants are not liable. Within this rule of law the plaintiff has shown no justification for the verdict rendered.

Upon the admitted facts as I read them, these defendants had probable cause to believe that the plaintiff's mind was unbalanced. In his own letter to the bishop from Westport, dated May 26, 1910, the plaintiff himself wrote:

"What I have suffered in my mind God alone knows, and I feel I cannot stand it much longer, and you will have to condone my acts as beyond my control if my nerves refuse to stand the strain any longer. There is a limit to all things."

Dr. P. J. Barrett, one of the members of the plaintiff's parish, had written to defendant Conroy and had stated personally to defendant Gabriels that the plaintiff was insane and ought to be restrained of his liberty for the safety of the public. Dr. Pattison of Elizabethtown had written to the defendant Gabriels that the plaintiff was in a very nervous condition; that the housekeeper felt the necessity of having some one with her; that he was very melancholy and at times very excitable and "I might say desperate. He does not sleep nights and takes very little nourishment. I fear unless conditions change that his case may become serious. I write this purely from a professional standpoint and am not interested in any controversy that may exist here at the present time." Dr. Hutchings, the superintendent of the State Hospital at Ogdensburg, had expressed his opinion that plaintiff was a paranoiac and should be confined. Drs. Cooper and Hanbridge, two of the leading physicians in Ogdensburg, had examined him, and under oath certified to his insanity. These are facts from which different inferences could not be drawn, and are convincing to the court that these defendants had probable cause for instituting these proceedings. There are many facts which were brought to the knowledge of the bishops which confirmed the opinions of these physicians. He proved to be a trouble maker in every parish to which he was assigned. He abused and denounced his parishioners from the altar. He exacted unusual service from them and their children and refused communion to those who failed to respond. He refused communion to a village

trustee, who had voted to remove a Catholic constable, until he should explain his vote. He sought to compel those whom he had denounced to come to his church, and rebuked the bishop for not enforcing the plaintiff's commands. He defied the bishop and wrote insulting letters to him. In one letter he referred to a former letter from him as an "asinine letter" and called him a "damn fool." In the same letter he said to the bishop:

"You are an infamous coward. You ought to be ashamed of yourself, but you have lost all shame, to let the lowest and most ignorant scruff of your diocese walk over your priests. I am no schoolboy and you will find it out."

In an open letter to the bishop he characterized him as an "aged, incapacitated, and irresponsible bishop." He informed his parishioners that Catholics who had opposed him had been found dead or their buildings burned. He was insubordinate and refused to follow the directions of the bishop whom he had sworn to obey when he became a priest. These facts and many others were known to the bishop, and when, in addition, the defendants had trustworthy opinions from qualified physicians of the man's irresponsibility, it would appear that defendants had abundant cause to institute these proceedings.

I recommend, therefore, that the judgment and order be reversed, and a new trial ordered, with costs to appellants to abide event.

This court disapproves of the finding of fact by the jury that the defendants were guilty of fraud in instigating the proceeding for the plaintiff's commitment, for the reason that there is no evidence upon which such a finding can be upheld. All concur, except WOODWARD, J., dissenting.